UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
01 MAY -2 PM 3 2
U.S. DISTRICT COURT
N.D. OF ALABAMA

ALABAMA BREAD COMPANY, INC. )
and CHRISTOPHER J. LANG, )
  )
  Plaintiffs, )
  )
vs. ) Civil Action No: CV-00-3623-NE
  )
GREAT HARVEST FRANCHISING, INC., )
  )
  Defendant. )

ENTERED
MAY 2 2001

## MEMORANDUM OPINION

This action has risen like leavened dough from a franchise agreement between Alabama Bread Company, Inc. ("AlaBread") and Great Harvest Franchising, Inc. ("Great Harvest"). AlaBread is an Alabama corporation with its principal place of business in Huntsville, Alabama. Plaintiff Christopher J. Lang is its president and primary shareholder, and he resides in Madison, Alabama. Great Harvest is a Montana corporation specializing in the sale of bakery franchises, with its principal place of business in Dillon, Montana. Great Harvest commenced an action against AlaBread in a Montana state court. Instead of removing that action to federal court, AlaBread chose to participate in the Montana proceedings for a time before commencing this action, in which it requests this court to compel arbitration of the franchise agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et*

*seq.* This action is before the court on defendant's motion to dismiss (doc. no. 4) and plaintiffs' joint motion to compel arbitration and stay the Montana action (doc. no. 6). Upon consideration of the pleadings, briefs, and oral arguments of counsel, this court finds defendant's motion is due to be granted, and plaintiffs' motion denied.

## I. FACTS

On November 7, 1994, Great Harvest and AlaBread entered into a franchise agreement for an initial term of five years. Christopher J. Lang, AlaBread's president and primary shareholder, guaranteed the agreement. Pursuant to that agreement, AlaBread operated a Great Harvest franchise bakery in Huntsville, Alabama, until November 7, 1999, when the agreement expired. AlaBread chose not to extend its franchise relationship with Great Harvest, but continued to operate a bakery business in the same location under a different name.

### A.   The Franchise Agreement

Section II of the agreement, entitled "Franchise Operation," outlines the responsibilities of the franchisor and franchisee. The "Franchisee's Responsibilities," contained in sub-section II.B, are described in 19 numbered paragraphs. Number 10, entitled "Non-

Competition, Confidentiality," is divided into three additional sub-sections. Subsection "a" provides that the franchisee will not own or operate any business that produces whole wheat bread or rolls for sale within a twenty mile radius of the bakery for a period of two years after the termination of the agreement. Subsection "b" restricts the franchisee from possessing "any interest, direct or indirect, in the ownership or operation of any business, wherever located, which uses *Great Harvest* Confidential Information or offers for sale baked goods which are identical or confusingly similar to the *Great Harvest* products."[1]   It also contains an extensive list of items that are defined as "Great Harvest Confidential Information."[2]  Sub-section "c" restricts the

---

[1] Plaintiff's evidentiary submission (doc. no. 7), Ex. 1 at 15 (emphasis in original).

[2] *Id.* "Confidential Information" is defined as:

> including, without limitation, all recipes and their related measurements, all bread making processes, techniques, skills, temperatures, timing, all baking forms and systems, all details of *Great Harvest* bread making theory or practice, oven systems, ingredient standards, wheat standards, ingredient supplier lists, wheat suppliers, equipment standards, special uses of equipment not commonly known outside Great Harvest, equipment supplier lists, all details of Great Harvest's unique sample board theories and practices, sample board training rules, all details of Great Harvest's unique bakery management theories and practices, *Great Harvest* pitfall training methods, bakery promotion training methods, all bakery management forms and systems, build-out specifications, all details of *Great Harvest* location hunting theory or practice, location search kits and tapes, tracking lists and tapes, all details of Great Harvest's unique franchising theories and practices, all secrets for achieving high gross sales in new bakeries, all proprietary newsletters, all audio/visual training tapes, the Confidential Operating Manual, the candidates list, all

3

franchisee from using, without prior written consent, Great Harvest marks, names, or elements of decor.[3]

The franchise agreement clearly provides that it is to be governed by Montana law.[4] It also contains a clause governing the resolution of disputes. It provides that any disputes concerning "product quality, business quality, or the security of trade secrets shall be resolved <u>as we</u> [*i.e.*, Great Harvest] <u>determine</u>," but that

> [a]ny and all disputes <u>not</u> <u>specifically</u> <u>related</u> <u>to</u> product quality, business quality, or <u>the</u> <u>secrecy</u> <u>of</u> <u>the</u> <u>Great</u> <u>Harvest</u> <u>System</u>, but regarding the interpretation, application, or reasonableness of this agreement or any addendum thereto, that are not mutually resolved by the parties within the time specified in the agreement, shall be resolved <u>by</u> <u>arbitration</u> by use of the American Arbitration Association, if allowable under state law.[5]

**B.   The Montana Action**

Great Harvest filed a complaint against Lang and AlaBread in a Montana state court on March 31, 2000, alleging that Lang and

---

candidate information, all proprietary internal personnel practices, and any other information or materials arising from Great Harvest related to the art of bread making, the operation of a *Great Harvest* bakery, the internal operation of Great Harvest Franchising, Inc. or the training and franchising of the *Great Harvest* System to *Great Harvest* bakery owners.

*Id.* (italics in original).

[3] *Id.*

[4] *Id.* at 25 (number 8).

[5] *Id.* (number 9) (emphasis supplied).

AlaBread breached the franchise agreement by continuing to use Great Harvest's trade secrets, continuing to operate a bakery in violation of the non-compete provision, and failing to return Great Harvest's confidential materials. Lang and AlaBread chose not to remove the action to federal court on the basis of diversity jurisdiction (28 U.S.C. § 1332(a)(1)), but instead responded to the complaint by filing a motion to dismiss for lack of personal jurisdiction. The Montana court denied the motion to dismiss on November 17, 2000, finding Lang and AlaBread had established minimum contacts with the State of Montana. As of this date, the Montana action has been proceeding for over a year. The parties have conducted written discovery, and the case is set for trial during August of 2001. Lang and AlaBread also neglected to file a motion to compel arbitration in the Montana case.

### C.  Proceedings in This Court

Lang and AlaBread filed the present action on December 18, 2000, over eight months after the initiation of Great Harvest's Montana suit (doc. no. 1).[6] They contend the claims asserted by Great Harvest in the Montana action are subject to an arbitration clause contained in the franchise agreement, and request this court

---

[6] Lang and AlaBread apparently first filed an action in Alabama state court, but voluntarily dismissed that suit before filing the instant action.

to compel arbitration pursuant to the Federal Arbitration Act. They also assert claims for breach of contract, fraud, and breach of warranty.

Great Harvest filed a motion to dismiss this action on January 25, 2001, asking the court to "decline jurisdiction in this matter."[7] On February 2, 2001, ten months after the state suit was filed, plaintiff responded by filing a motion to compel arbitration of the franchise agreement and enjoin the Montana action.[8] Great Harvest contends that its claims in the state suit are not arbitrable because they concern "the secrecy of the *Great Harvest* system" and the "security of trade secrets," which are expressly reserved from arbitration.

## II. DISCUSSION OF GENERAL PRINCIPLES

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983). Moreover, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *Colorado River Water Conservation District v. United*

---

[7] Defendant's motion to dismiss (doc. no. 4) at 2.

[8] Plaintiffs' motion to compel arbitration and stay Montana lawsuit (doc. no. 6).

*States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). Even so, in limited circumstances, federal courts may abstain from exercising jurisdiction.

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Moses H. Cone*, 460 U.S. at 14, 103 S.Ct. at 936 (quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244) (internal quotation marks omitted).

The Supreme Court has recognized five situations in which a federal court may appropriately decline to exercise its jurisdiction in consideration of the principles of federalism,[9] comity,[10] and wise judicial administration.[11] First, a federal court should abstain "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a

---

[9] "Federalism ... refers to the relations between state and federal sovereigns." Barry Friedman, *A Revisionist Theory of Abstention*, 88 Mich. L. Rev. 530, 536 (1989).

[10] "Comity refers to the relations between coordinate state and federal judicial systems." *Id.*

[11] "[S]tate courts, and the litigants before them, should not be subject to the 'disruptive' effect of parallel or preemptive federal proceedings." *Id.*

7

state court determination of pertinent state law." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).[12] Second, abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."[13] *Id.* Third, federal courts are required to defer to complex state administrative procedures, when "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[14] *Id.*, 424 U.S. at 814, 96 S.Ct. at 1245. Fourth, the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971), and expanded by its progeny, requires federal courts to abstain from enjoining criminal and certain civil proceedings pending in state court.[15] Finally, in furtherance of considerations

---

[12] This abstention doctrine, known as *Pullman* abstention, is named for the case in which it was announced, Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

[13] *Thibodaux* abstention is likewise named for the case that announced it: Louisiana Power & Light Company v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

[14] This doctrine, known as "*Burford* abstention," takes its name from Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

[15] *See* Erwin Chemerinsky, Federal Jurisdiction § 13.3 (2nd ed. 1994).

8

of wise judicial administration, federal courts may dismiss or stay a federal action in deference to concurrent state court litigation. *See Colorado River*, 424 U.S. at 817-19, 96 S.Ct. at 1246-47. The instant action implicates only the final category, *Colorado River* abstention.

The doctrine announced in *Colorado River* "allows a federal court to dismiss a case when a concurrent state proceeding provides a more appropriate forum." *TranSouth Financial Corporation v. Bell*, 149 F.3d 1292, 1294 (11th Cir. 1998). The Supreme Court has "declined to prescribe a hard and fast rule for dismissals of this type, but instead described some of the factors relevant to the decision." *Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936. Six factors generally are addressed when determining whether to abstain in favor of a concurrent state proceeding:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of the parties.

*TranSouth*, 149 F.3d at 1294-95 (citing *Moses H. Cone*, 460 U.S. at 16-26, 103 S.Ct. at 937-42). These criteria are flexible, however, and cannot be applied according to a "rigid formula"; indeed, "no

one factor is dispositive." *Id.* at 1295. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case. ..." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Further, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.* Nevertheless, the court must weigh the factors with a "heavy bias in favor of exercising jurisdiction." *TranSouth*, 149 F.3d at 1295. "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819, 96 S.Ct. 1247.

In *Calvert Fire Insurance Company v. American Mutual Reinsurance Company*, 600 F.2d 1228 (7th Cir. 1979), the Seventh Circuit found justifications warranting a stay of the federal action in favor of a state action. The federal defendant in *Calvert*, American Mutual Reinsurance Company ("Amreco"), first filed a declaratory judgment action in state court seeking a declaration that a contract between Amreco and Calvert Fire Insurance Company ("Calvert"), governing Calvert's participation in a reinsurance pool, was valid and in effect. *Id.* at 1230.

10

Calvert asserted defenses in the state litigation, which were unsuccessful. *Id.* Six months later, Calvert raised the affirmative defense of fraud under state common law and the federal and state securities acts. *Id.* at 1231. Calvert concurrently filed an action in federal court for recission and damages under the Securities Act of 1934, which grants exclusive jurisdiction to the federal courts to hear claims under that act. *Id.* After hearing oral argument, the district court stayed the federal action.[16]

On appeal, the stay order was upheld.[17] Before addressing the *Colorado River* factors, the Seventh Circuit first noted several of the district court's observations. The federal suit had been filed "a full six months" after the filing of the state action. *Id.* at 1230. Further, Calvert, the federal plaintiff, had admitted in oral argument before the Supreme Court that its only federal claim

---

[16] The district court issued with little explanation the order staying all aspects of the federal action that were concurrently before the state court. The stay excluded a damages claim under the Securities Exchange Act of 1934, because that claim was exclusively within federal jurisdiction. Calvert applied to the Seventh Circuit Court of Appeals for a writ of mandamus seeking a reversal of the stay order and an order compelling an immediate ruling on the 1934 Act claim for damages. The Seventh Circuit granted the writ. The Supreme Court reversed the mandamus order, holding that mandamus was inappropriate because there was not a "clear and indisputable" right to the writ. On remand, the Seventh Circuit determined that the action should be remanded to the district court in light of *Colorado River*. Calvert Fire Insurance Company v. American Mutual Reinsurance Company, 600 F.2d 1228, 1231-32 (7th Cir. 1979).

[17] *See supra* note 16.

11

was unsupported. *Id.* at 1232. Finally, Calvert had failed to remove the state action to federal court, despite the fact that diversity jurisdiction existed. *Id.* After reiterating the *Colorado River* factors, the Seventh Circuit found the district court's stay order was an appropriate exercise of abstention. The court observed that the district judge had placed "much emphasis on his perception of the federal suit as a reactive defensive maneuver by Calvert to delay the state proceeding and postpone final resolution of its dispute with Amreco." *Id.* at 1234. The Seventh Circuit concluded:

> Certainly, under *Colorado River*, it was proper for Judge Will to consider the vexatious nature of the federal suit as well as any other factors bearing on the propriety of continuing the stay. Preventing a vexatious suit is similar to the interest in avoiding piecemeal litigation mentioned in *Colorado River*, and would clearly justify federal deferral to a parallel state proceeding unless there exist strong countervailing reasons for the federal court to decide the federal suit without delay...

*Id.* (citation omitted). The Seventh Circuit found "ample evidence" to support the district court's conclusion that the federal action was "vexatious." *Id.* n.14. The court concluded that, in the absence of exclusive federal jurisdiction, the stay was reasonable, and that it furthered the policy interest of affording district judges with a "means to deter vexatious use of the federal courts."

12

*Id.* at 1236. Accordingly, the Seventh Circuit affirmed the district court's order staying the federal proceedings pending termination of the stay action. *Id.* at 1236.

In *Moses H. Cone*, the Supreme Court articulated its approval of the Seventh Circuit's decision in *Calvert*. The Court observed that the Seventh Circuit "concluded that the filing of the federal suit was a 'defensive tactical maneuver' based on a contrived federal claim; hence, a stay was called for as a 'means to deter vexatious use of the federal courts.'" *Moses H. Cone*, 460 U.S. at 17 n.10, 103 S.Ct. at 937 n.10. The Court then concluded that the reasoning of the Seventh Circuit — "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River* — has considerable merit." *Id.*

The Eleventh Circuit also has recognized that the nature of the action and the conduct of the parties are relevant considerations in evaluating the entitlement to relief in federal court. In *Untracashmere House, LTD, v. Meyer*, 664 F.2d 1176 (11th Cir. 1981), the Eleventh Circuit addressed the "quagmire" that results when arbitration disputes involve both state and federal courts. *Id.* at 1178. In that case, Ultracashmere House, the

13

defendant in the state action, filed an action in federal court nine months after the state action had commenced, and only four days before trial was to commence in state court. *Id.* at 1179. By that time, the state court had found the arbitration clauses void and unenforceable, and permanently enjoined Ultracashmere from pursuing attempts to arbitrate. *Id.* Ultracashmere could have removed the action to federal court, but instead filed an answer and counterclaim and took depositions of witnesses. *Id.* The district court refused to stay the state proceedings, and stayed the federal action. *Id.* The Eleventh Circuit affirmed, finding the district court's actions justified given the federal plaintiff's inexcusable delay in filing the action and failure to exercise its right to removal. *Id.* at 1181-82. The court held:

> We agree with the district court that the Arbitration Act does not unconditionally entitle a party to relief in federal court. Rather, federalism and judicial efficiency require that the conduct of the parties, in particular the timeliness of their actions and the status of state court litigation between the same parties, be considered by federal courts in deciding whether to grant such relief. We also agree with the district court that appellant's failure to effectuate a timely removal, coupled with its delay in bringing this action, precluded that court from interfering with the state court proceedings and from allowing appellant to relitigate the issues.

*Id.* at 1178.

### III. APPLICATION OF GENERAL PRINCIPLES
### TO THE FACTS OF THIS CASE

Applying the *Colorado River* factors to the present action, it is clear that exceptional circumstances warrant dismissal. The first factor does not apply because there was no assumption by either court of jurisdiction over any property.

A comparison of the relative inconvenience of the fora supports deferral to the Montana litigation. It will be as inconvenient for Great Harvest to travel to Alabama, as it is for AlaBread to travel to Montana. The franchise agreement was negotiated in Montana, and training was provided there. The law of Montana must be applied to the construction of the contract. Further, most of the witnesses and documentary evidence concerning Great Harvest's recipes, equipment, and business philosophy are located in Montana.

The third factor, the order in which jurisdiction was obtained and the relative progress of the two actions, weighs in favor of dismissal. A court's examination of the priority of filing "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940. This court must examine not only which complaint was filed first, but the progress that has been made in the two

actions. *Id.* The Montana action was filed on March 31, 2000. The federal action was filed on December 18, 2000, more than eight months later. The parties have conducted written discovery in the Montana action, but have not proceeded to that stage here. The Montana action is set for trial in August, 2001. No trial date has been set in this action. AlaBread easily could have acted earlier by removing the state action, or filing an action in federal court.

This action also presents a significant potential for piecemeal litigation. In *TranSouth*, the Eleventh Circuit found the potential for piecemeal litigation was not a significant concern, because "no piecemeal litigation would ensue with regard to the arbitrability of the dispute, the only question before the federal court." *TranSouth*, 149 F.3d at 1295. In the present action, on the other hand, AlaBread has presented several claims in federal court in addition to its demand for arbitration. AlaBread has asserted breach of contract and fraud claims that relate to Great Harvest's trade secrets, the subject matter of the Montana litigation. Claims involving the security of trade secrets are not arbitrable and have been brought in the Montana court. Thus, two courts will be construing the same contract provisions. AlaBread's fraud claims relate to the validity of the contract, an issue that

16

also must be decided in the state action.

The law to be applied also weighs in favor of discretionary dismissal. The franchise agreement clearly provides that it will be governed by Montana law. All of the claims involved in both actions are state law claims; federal law will be applied only with respect to their arbitrability. Great Harvest's claims in the state action involve the secrecy and security of Great Harvest's trade secrets, and are excepted from the arbitration clause.

Further, even if AlaBread's claims in the Montana action were arbitrable, it has waived its right to compel arbitration. "The issue of arbitrability under the United States Arbitration Act is a matter of federal law," and "federal law comprising generally accepted principles of contract law controls the question of arbitrability." *Morewitz v. West of England Ship Owners Mutual Protection and indemnity Association*, 62 F.3d 1356, 1364 (11th Cir. 1995). Federal courts will enforce arbitration agreements when the parties have clearly agreed in advance to subject their claims to arbitration. *Id.* at 1364-65. Nevertheless, the right to compel arbitration may be waived.

> Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party.

17

> *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

*Morewitz*, 62 F.3d at 1366. Here, the degree of AlaBread's participation in the Montana action is inconsistent with an intent to arbitrate. AlaBread failed to remove the Montana action, failed to move to compel arbitration in that action, and delayed over eight months before filing suit in this court. Meanwhile, AlaBread filed a motion to dismiss the state action, and participated in discovery after losing that motion. AlaBread's actions have resulted in prejudice to Great Harvest, which has incurred litigation expenses in the Montana action that would have been avoided had AlaBread sought to compel arbitration earlier.

In any event, the claims asserted by Great Harvest in Montana are not subject to the arbitration provision of the franchise agreement, because they concern the security of trade secrets. The only claim in that action that is arguably arbitrable is the reasonableness of the non-compete provision. Even so, AlaBread has waived its right to compel arbitration by failing to assert it in the Montana action, and delaying unnecessarily in filing the

18

present action. Further, the claims brought by AlaBread in this court concern product quality, business quality, or security of trade secrets: <u>all</u> claims that are to be resolved as <u>Great Harvest</u> determines under <u>Montana</u> law. Thus, the law to be applied weighs in favor of dismissal of this action in favor of the Montana litigation.

The Montana court will be able to provide a full and adequate remedy to AlaBread. State and federal courts have concurrent jurisdiction over demands for arbitration under the Federal Arbitration Act. Because the Federal Arbitration Act is not a basis for federal question jurisdiction, Congress clearly envisioned that demands for arbitration would be heard in state courts.

Several factors thus compel this court to dismiss this action in deference to the Montana action. AlaBread could have removed that action to federal court in Montana, but intentionally failed to do so.[18] The parties have conducted written discovery, and a trial has been set. Most tellingly, AlaBread neglected to assert the arbitrability of the dispute in the Montana court. Finally, AlaBread presented arguments to this court with spurious legal

---

[18] When pressed in oral argument to provide an explanation for AlaBread's failure to attempt removal, the only response counsel could provide was: "Well, your honor, that was strategic."

19

merit.[19] The foregoing facts lead this court to conclude that this action was not a good faith attempt to compel arbitration, but merely a vexatious attempt to delay the Montana action and circumvent the removal statute.

## IV. CONCLUSION

AlaBread's involvement in the state litigation is a result of its own dilatory behavior. Thus, this court finds the balance of the factors weigh in favor of abstention. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this the **2nd** day of May, 2001.

_____
United States District Judge

---

[19] AlaBread attempted to argue that this court is the only court with the ability to order arbitration because the American Arbitration Association determined that the arbitration should take place in Huntsville, Alabama. The Federal Arbitration Act, 9 U.S.C. § 4 provides: "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." AlaBread contends that such language prevents a court in Montana from issuing an order compelling arbitration. That contention is patently incorrect. That same section provides: "A party aggrieved by the alleged failure, neglect, or refusal of anther to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28." (Emphasis supplied.) Further, a similar argument made in regard to §§ 9-11 of that act was rejected by the Supreme Court in Cortez Byrd Chips, Inc. v. Bill Harbert Construction Company, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000), in which the Court observed that the language of § 4 is "obviously permissive." Id. at 199, 120 S.Ct. at 1336.